See also, 9th Cir., 796 F.2d 276.

**NATIONAL ORGANIZATION FOR the REFORM OF MARIJUANA LAWS (NORML), et al., Plaintiffs,**

v.

**Francis M. MULLEN, Jr., et al., Defendants.**

**No. C–83–4037–RPA.**

United States District Court, N.D. California.

Sept. 8, 1986.

Ronald M. Sinoway, Inc., Redway, Cal., R. Elaine Leitner, Keker & Brockett, San Francisco, Cal., Melvin B. Pearlston, Redway, Cal., Gordon S. Brownell, Arthur M. Sohcot, San Francisco, Cal., Marshall Krause, Larkspur, Cal., for plaintiffs.

Catherine A. Rivlin, Deputy Atty. Gen., John Penrose, Asst. U.S. Atty., San Francisco, Cal., for defendants.

**ORDER OF REFERENCE TO SPECIAL MASTER**

AGUILAR, District Judge.

The Court first issued its Preliminary Injunction in this case in October 1984, and amended the injunction on April 12, 1985. *NORML v. Mullen,* 608 F.Supp. 945, 965–

66 (N.D.Cal.1985).[1] Plaintiffs subsequently alleged numerous instances of violations. On September 27, 1985, after three days of testimony covering several of the allegations, the Court ruled that plaintiffs had failed to show by clear and convincing evidence that any defendant had deliberately violated the injunction. There was nevertheless credible evidence of violations, and the Court found that some CAMP personnel still are not adequately trained as to the terms and practical significance of the injunction, are not adequately briefed before each raid as to the permissible scope of and methods to be used in the raid, and are not adequately supervised. It was also apparent from the testimony that the raids are not sufficiently planned out ahead of time to minimize the chance of violations.[2]

Such evidence of noncompliance with an injunction that first issued nearly a year earlier portends continuing violations, especially when viewed in light of the fast-paced and wide-ranging character of CAMP surveillance and raid activities, the difficult legal issues involved, and the numerous affirmative measures that the Court has ordered defendants to undertake. These circumstances constitute an "exceptional condition" and call for the appointment of a Special Master (hereafter "Monitor") pursuant to Federal Rule of Civil Procedure 53, to monitor compliance with the injunction.

1. The April 12, 1985 Preliminary Injunction enjoined the defendants in the following manner.
  1. Defendants and CAMP personnel are enjoined from entering by foot, motor vehicle, or helicopter any private property other than open fields without a warrant obtained on probable cause.
  2. When defendants are on public land, or on private land pursuant to a proper warrant, they are enjoined from entering adjacent or nearby property other than open fields, unless a warrant issues on probable cause, or unless exigent circumstances exist. Mere speculation that a nearby parcel of land may in some way pose a hazard to CAMP personnel does not constitute exigent circumstances.
  3. Defendants are enjoined from using helicopters for general surveillance purposes, except over open fields. When conducting surveillance over open fields, helicopters shall not fly within 500 feet of any structure, person or vehicle. Helicopters surveying open fields in the vicinity of residential structures shall not fly within the hemisphere extending 500 feet from the outer circumference of the curtilage of any residence, and shall not survey any home or curtilage.
  4. When CAMP helicopters are not conducting surveillance, but are ferrying personnel, supplies, or cut crops, the helicopters shall take the most direct route available that overflies the fewest possible private residences, unless safety requires otherwise. Helicopters shall maintain an altitude of at least 500 feet, except when landing on or leaving the target property, or unless safety requires otherwise.
  5. Before any further CAMP flights or ground activities are undertaken, defendants are ordered to: a) meet with all CAMP pilots, and all supervisory ground personnel, and instruct them as to the content of this order; b) give all CAMP personnel a complete copy of the terms of this injunction; and c) submit to the Court appropriate affidavits detailing this instruction and distribution.
  608 F.Supp. at 965–66 (footnotes omitted).

2. As a result of the evidence of noncompliance, much of which came from defense witnesses, the Court added the following provisions to the Preliminary Injunction:
  1. Before each raid begins, CAMP supervisory personnel and the local team leader(s) shall meet and carefully plan the raid in order to minimize the risk of intentional or inadvertent violations, major or minor, of the terms of the injunction. Any maps, aerial photos, and other relevant data shall be considered at this meeting.
  2. Before each raid begins, the team leader(s) shall orally brief *each* team member about 1) the pertinent terms of the injunction, and 2) the permissible scope of the raid and the appropriate methods to be used, in light of the terms of the injunction, the provisions of any search warrant, and the decisions of the prior meeting(s) with supervisory personnel. This briefing shall cover all aspects of the raid, including but not limited to searches, detentions and seizures.
  3. Before each raid begins, all helicopter pilots to be involved in the raid shall be orally briefed about 1) the pertinent provisions of the injunction, 2) the flight paths they must take to best comply with the mandates of the injunction, and 3) the altitudes they must maintain along those flight paths. If safety requires last-minute changes in those flight plans, the pilot must so report and the team leader must make a prompt written record of that variation. Pilots shall be made aware, through maps and photos when available, of the location of known structures and population centers.
  Order, September 27, 1985, pp. 3–4.

Only a Monitor, as the Court's expert on the exigencies presented by CAMP's aviation and field practices, remote and inaccessible terrain, and grower tactics, can provide the Court with the objective, first-hand information necessary to fairly enforce its injunction, and to frame any further amendments or orders. Further, the latest hearings demonstrated that contempt proceedings are an inefficient and ineffective means of preserving the rights of the plaintiffs and impose harsh burdens on legitimate CAMP enforcement activities. The Monitor, familiar with the needs of all parties, will be in a far better position than the Court to help the litigants avoid costly and wasteful disputes and to expeditiously resolve those disputes that do arise.

The Court has therefore determined that this is an exceptional case and will appoint a Monitor pursuant to Rule 53 and the inherent power of the Court to enforce its orders. The Court has previously submitted a proposed reference order to the parties, heard objections and argument on the proposal, and reviewed the modifications and alternatives offered by counsel. The Court also has carefully considered the parties' nominations for Monitor. Good cause appearing therefor, the Court hereby appoints the Monitor and charges him as follows.

## APPOINTMENT OF MONITOR

1. The Court appoints as Monitor the Honorable Thomas Kongsgaard, Superior Court of Napa County (Ret'd), 500 Stonecrest Drive, Napa, California, 94558. Judge Kongsgaard is a respected jurist who ably served on the bench for 26 years. He is intimately familiar with the requirements of the fourth amendment and is proficient at conducting evidentiary hearings. He recently has served other courts and parties as a special master and arbitrator, and will bring the highest degree of objectivity, impartiality, and integrity to the position of Monitor.

2. The Monitor shall serve only until such time as defendants have prevailed on the merits, or it is established that defendants are not violating any term of the Preliminary or any permanent injunction, or until further order of the Court.

## DUTIES OF THE MONITOR

3. The Monitor shall serve the Court, not as an ally or adversary of any party, but as a source of objective information regarding the policies and practices of the CAMP program, and as a fact finder. The Monitor's duties pertain solely to questions surrounding enforcement of and compliance with the Preliminary Injunction, not to damages issues. Rule 53 shall govern all questions relating to the scope of the Monitor's duties and powers to the extent that the rule is not inconsistent with the express provisions of this Order of Reference.

The Monitor shall have the duty to:

4. review from time to time the written and unwritten policies and customs of the CAMP program, and of the federal and state defendants as they pertain to the CAMP program;

5. investigate from time to time the methods, training programs, and actual field practices of CAMP personnel and all other agencies and agents implementing the CAMP program;

6. report to the Court from time to time about these policies and practices;

7. immediately report to the Court any policies or practices that the Monitor believes may violate the letter or spirit of any term of the Preliminary Injunction;

8. advise the Court concerning any modification(s) of the Preliminary Injunction that the Monitor deems necessary or beneficial, or that is requested by a party; and

9. perform such other duties as the Court may assign, after notice to counsel.

## POWERS OF THE MONITOR

The Monitor shall not purport to direct any CAMP activities or agents, or issue orders, but shall have the power to:

10. obtain advance notice of CAMP-sponsored planning and training sessions

that pertain to particular acts of surveillance and raids, and to attend such sessions, with or without advance notice to defendants;

11. obtain any document produced by CAMP or cooperating agencies or individuals that may be relevant to a determination of compliance with the injunction;

12. interview, on a confidential basis or otherwise, any CAMP director, supervisor, or team member, or any person assisting in the implementation of the CAMP program. However, the Monitor shall not base any findings or legal conclusions in any subsequent contempt hearing on statements received in this manner, or on statements received informally from citizens and witnesses;

13. obtain details of the times and locations of CAMP eradication raids and field operations in advance of those raids and operations, as soon as practicable after defendants determine the times and locations;

14. be present during CAMP ground and air surveillance, the execution of warrants and raids, and all other field activities, with or without advance notice, but complying with all reasonable requests of CAMP personnel or counsel regarding safety and secrecy;

15. upon receipt of declarations or pleadings alleging violations, or when otherwise necessary, convene evidentiary hearings concerning any matter relating to compliance with the Preliminary Injunction, compel the attendance of witnesses, and take evidence. At such hearings the Monitor shall give the parties a reasonable opportunity to be heard, make a stenographic record of the proceedings, and exercise all other powers described in Federal Rule of Civil Procedure 53(c);

16. within 15 days of the conclusion of any such hearing make written findings of fact and conclusions of law for submission to the Court; and

17. retain when necessary experts, specialists, or other persons whose advice or testimony the Monitor deems important to resolve questions concerning compliance with the injunction. The monitor must obtain the approval of the Court before retaining any such person.

## CONFIDENTIALITY

18. The Monitor shall not disclose to any party, person, or entity other than the Court any non-public information, written or unwritten, regarding CAMP policies, customs and practices, or surveillance or raid plans.

## COMMUNICATIONS WITH COUNSEL

19. All written communications between the Monitor and counsel shall be served on designated counsel. The Monitor and counsel shall not engage in *ex parte* oral communications regarding injunction compliance (other than as necessary to effectuate paragraphs 10–14, *supra*) except upon a showing of good cause and exigency.

## REPORTS AND FINDINGS OF THE MONITOR

All reports of the Monitor shall be filed in accordance with Federal Rule of Civil Procedure 53(e). Before filing any report or findings with the Court, other than a report pursuant to paragraph 7 *supra*, the Monitor shall:

20. serve copies of the proposed report or findings upon two designated attorneys for plaintiffs and two designated attorneys for defendants;

21. afford a reasonable time for counsel to submit specific written objections or suggested modifications to the proposed report or finding, or any part thereof, and to submit any requests for hearing;

22. serve copies of any modification of the report or findings on designated counsel; and

23. convene a hearing if requested by a party, unless the Court determines that such a hearing would be unnecessary or inappropriate.

All findings of fact of the Monitor shall be adopted by the Court unless:

24. a party moves to reject or modify the report within ten days of being served with notice of the filing of the report, and

25. that party already raised substantially the same objection to the Monitor pursuant to paragraph 20 *supra,* or made an objection that led to a modification that is now being challenged; or

26. the findings of the Monitor are clearly erroneous.

27. Any conclusions of law will be reviewed *de novo* by the Court.

### FEES, COSTS, AND EXPENSES

28. The Monitor shall be compensated at the rate of $100 per hour for services performed in accordance with this Order, except when observing CAMP surveillance and raid activities in the field, for which he will be compensating at the rate of $150 per hour. These rates have been determined by the Court by reference to the rates the Monitor named herein would reasonably charge for comparable services performed for private clients, and is subject to change by further order of the Court.

29. All reasonable costs and expenses incurred by the Monitor in carrying out his duties under this Order shall be reimbursed as costs of the mastership. Expenditures of more than $300 for a single item must be pre-approved by the Court.

30. All of the Monitor's fees, costs, and expenses shall be borne by the defendants as part of the costs of this action and pursuant to Rule 53.

31. Defendants are ordered to secure requisitions from the Treasurer of the State of California and the United States Treasury for an initial sum of fifty thousand dollars ($50,000) for interim payment to the Monitor. This sum shall be deposited into the Registry of the Court in an interest-bearing account. Every three months the Court shall determine whether additional sums must be deposited with the Clerk, and shall order defendants to deposit any such funds.

32. Each month the Monitor shall submit itemized statements of fees, costs, and expenses to the Court and to the defendants or their designated representatives. Defendants shall have ten days to object to any of the itemizations. If there is no objection, the Clerk shall disburse the requested sum without further order of the Court. If there is an objection, the Monitor has ten days from receipt of notice of the objection to respond. If the Monitor fails to respond, the Clerk shall disallow the disputed item(s) without further order of the Court. After the Court considers an objection and the Monitor's response thereto, it shall direct the Clerk of the Court to disburse the appropriate sum, if any, to the Monitor.

33. The parties are instructed to contact Judge Kongsgaard by March 14, 1986, to arrange a preliminary meeting.

IT IS SO ORDERED.